IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| AMERICAN WESTERN HOME INSURANCE COMPANY, | )<br>)<br>) Case No. 08-0419-CV-W-ODS-ECF |
| Plaintiff, | )<br>) |
| vs. | )<br>)<br>) |
| UTOPIA ACQUISITION L.P., et. al. | )<br>) |
| Defendants. | ) |

## PLAINTIFF'S REPLY TO DEFENDANT'S SURREPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW plaintiff, and for its Reply to Defendant's Surreply to Plaintiff's Motion for Summary Judgment, states as follows:

Plaintiff filed its Motion for Summary Judgment in this declaratory action case arguing that the "Mold Exclusion" to the liability policy at issue applies to bar coverage for the claims made by Nash in her draft petition. In their response, defendants did not dispute the applicability of the "Mold Exclusion" and instead, in an attempt to demonstrate that Nash is claiming damages as a result of conditions other than mold, argued that the draft petition claimed damages due to "other airborne contaminants and/or irritants", "serious moisture", "water residue", and "moisture-related contamination." Thus, in their Surreply, defendants claim that "plaintiff ignores allegations in the draft petition for damages…that invoke a defense and coverage for Utopia under the CGL Policy…specifically, Nash alleges that their alleged injuries were caused by serious moisture problems in the apartment and due to exposure to airborne

contaminants and/or irritants in addition to mold." (Defendant's Surreply to Plaintiff's Motion for Summary Judgment).

Plaintiff's position, as reflected in its earlier submissions, is that the damage plaintiffs (i.e. Nash) are not claiming injury due to moisture; the damage plaintiffs clearly center their prayer for relief on moisture conditions *which caused the mold or allowed the mold to be present*. However, in its previous reply, plaintiff also argued that extraneous claims as to "airborne contaminants and/or irritants in addition to mold" would also be excluded from coverage per the "Pollution Exclusion." The policy provides that:

> This insurance does not apply to…"bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants"…"pollutants" mean any solid, liquid, gaseous or thermal *irritant* or *contaminant,* including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste….. (emphasis added).

Defendants argue that the "Pollution Exclusion" does not apply to the damage plaintiff's allegations of "irritants" and "contaminants." In support of their position, defendants make two (2) arguments: first, that "the pollution exclusion is ambiguous and water is not a pollutant"; and second, that "the pollution exclusion does not apply because there was no discharge." (Defendants' Surreply to Plaintiff's Motion for Summary Judgment).

Defendants' contentions, that the "Pollution Exclusion" is ambiguous and that water is not a pollutant, are without merit. Defendants cite a single case in support of their position, *Hocker Oil Company v. Barker-Phillips-Jackson*, 997 S.W.2d 510 (Mo. App. S.D. 1999). *Hocker* is easily distinguishable from the case at bar.

2

In *Hocker*, the insured operated a number of gas service stations and related businesses. *Id.* at 512. On January 12, 1988, a drain plug on a gasoline storage tank failed and 2,000 gallons of gasoline were released into the ground. *Id.* The gasoline migrated onto the property of persons living next to the service station. *Id.* Those persons brought suit against the insured. *Id.* The insurer denied coverage for the property damage, arguing that the pollution exclusion in the policy at issue precluded coverage for the loss. *Id.* The court held that the pollution exclusion at issue was ambiguous and thus did not bar coverage. *Id.* at 518. However, it is clear that the holding in *Hocker* was a narrow one and tailored to the unique facts of that case. As the court in *Hocker* noted, "it would be an oddity for an insurance company to sell a liability policy to a gas station that would specifically exclude that insured's major source of liability." *Id.* The court explained its holding as follows:

> Hocker is in the business of transporting, selling and storing gasoline on a daily basis. Gasoline is not a pollutant in its eyes. Gasoline is the product it sells. Gasoline belongs in the environment in which Hocker routinely works....Hocker was entitled to characterize gasoline in a manner consistent with its daily activities absent specific policy language to the contrary. Ranger's failure to identify "gasoline" as a pollutant in its pollution exclusion resulted in uncertainty and indistinctness. The policy was, therefore, ambiguous as to whether gasoline was a pollutant for purposes of the exclusion. *Id.*

Thus, the holding in *Hocker*, that gasoline was not a pollutant and that the policy was therefore ambiguous, was based on the fact that the insured was in the business of providing gasoline and so it would not be logical to say that the pollution exclusion denied coverage for damage caused by a material around which the insured's business revolved.

*Hocker* is of no avail to defendants. In that case, the court's holding was based on the fact that the alleged pollutant was a material that the insured dealt with everyday and which was the basis of its business. Here, that is not the case. The damage petition refers to "contaminants" and "irritants."

Defendants business does not involve dealings in "contaminants" and "irritants." The rationale of the court in *Hocker* is unpersuasive. Defendants assert that the "Pollution Exclusion" here is ambiguous, but offer no reason as to why they believe it is ambiguous. They merely state that the court in *Hocker* found a similar clause ambiguous. For the reasons already explained that contention is flawed.

Plaintiff suggests that the allegations in the damage petition fall squarely within the policy's exclusion. The policy defines "pollutants" to include <u>any</u> *solid, liquid, gaseous or thermal irritant or contaminant.* Apart from the primary allegations of bodily injury due to mold, which are excluded per the mold provision, the allegations of "airborne contaminants" and/or "irritants" clearly fall within the language of the exclusion and in fact mirror the terms of the exclusion. Therefore, the "Pollution Exclusion" operates to bar coverage for these allegations as well.

Defendants also assert that "water is not a pollutant." Plaintiff cannot locate any previous filings in the record where such a claim was made by any party. The damage petition itself is not claiming bodily injury due to "water." Rather, the damage petition claims bodily injury from mold and contaminants, which were themselves created by moisture. The argument that "water is not a pollutant" is irrelevant and misleading.

Finally, defendants argue that "the pollution exclusion does not apply because there was no discharge." The policy at issue precludes coverage for the "actual, alleged

4

or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'"

Defendants assert that there is no allegation of discharge, dispersal, seepage, migration, release or escape of pollutants and therefore, the pollution exclusion does not apply. Defendants also assert, without citing any authority, that pollution exclusions are designed so that when an insured pollutes, by discharging pollutants, the act of discharging is not a covered occurrence. Courts have had the occasion to analyze this language. *Hartford Underwriter's Insurance Company v. Turks*, 206 F.Supp.2d 968 (E.D. Mo. 2002). In *Hartford*, the issue was whether a pollution exclusion applied to bar coverage for bodily injury arising out of lead poisoning. *Id.* at 973. The court noted that the issue was whether the injuries arose from the "discharge, dispersal, release or escape of pollutants." *Id.* at 976. The court first explained that "words in an insurance policy are to be given their ordinary and popular meanings." *Id.* citing *Chenoweth-Chapman Corp. v. Am. Ins. Co.*, 553 S.W.2d 872, 876 (Mo. Ct. App. 1977).

The court then stated that "to determine the ordinary meaning of a term, the courts consult standard English dictionaries." *Id.* citing *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. 1997)(en banc). Relying on this approach, the court held as follows: "'discharge' is defined as to pour forth contents; "the word 'dispersal' comes from the verb disperse which is defined as to break up and scatter in various directions"; "the word 'escape' is defined as to get free"; "the word 'seepage' is defined as the act or process of seeping, seeping means to pas through small opening or pores"; the word 'migration' comes form the verb migrate which means to change location periodically"; and "the word 'release' means to set free from

confinement." *Id.* After defining these phrases, the court concluded that "each one of these definitions describe some type of movement from one place to another, from a contained position to a free one." *Id.*

In the case at bar, defendants' argument that there was no discharge, etc. fails. The damage petition alleges the presence of "airborne irritants and contaminants." Based on the definitions set forth by the court in *Hartford,* these irritants and contaminants would have to have "broke up and scattered" or "gotten free" from a confined area or "changed locations periodically." Indeed, the word "airborne" connotes that the irritants and contaminants were spread through the air from a certain, confined location. Consequently, the requisite "discharge, dispersal, seepage, migration, release or escape" of the pollutants was present.

Defendants' Surreply has failed to rebut plaintiff's position that the "Pollution Exclusion" is applicable on these facts. Accordingly, summary judgment in favor of plaintiff is warranted.

                              SCHMITT, MANZ, SWANSON & MULHERN, P.C.

                              By   /s/ Paul Hasty, Jr.
                                   Paul Hasty, Jr.        MO # 34470
                                   7101 College Blvd., Suite 350
                                   Overland Park, Kansas  66210
                                   (913) 317-8068
                                   (913) 317-8058 (facsimile)

                              **ATTORNEYS FOR PLAINTIFF**

I hereby certify that the above and foregoing was electronically filed and served by using the CM/ECF system on February 13, 2009, to:

Christopher Barhorst
SWANSON MIDGLEY, LLC
2420 Pershing Road, Suite 400
Kansas City, Missouri 64108
cbarhorst@swansonmidgley.com

**ATTORNEYS FOR DEFENDANT DALMARK MANAGEMENT GROUP LLC**


_____/s/ Paul Hasty, Jr._____
Paul Hasty, Jr.
For the Firm