IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| AMERICAN WESTERN HOME INSURANCE CO., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 08-0419-CV-W-ODS ) |
| UTOPIA ACQUISITION L.P., et al., | ) ) ) |
| Defendants. | ) ) |

ORDER AND OPINION GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending is Plaintiff's Motion for Summary Judgment. For the following reasons, the motion (Doc. # 16) is granted.

I. BACKGROUND

Utopia Acquisition, L.P. and Dalmark Management Group, LLC (collectively "Utopia") own and operate an apartment complex. Plaintiff issued a Commercial General Liability insurance policy (the "CGL Policy") to Utopia effective December 16, 2004, to December 16, 2005. It filed this action against Utopia as a result of claims asserted by Georgina Nash and her children (hereinafter collectively referred to as "Nash"), former tenants in the apartment owned and operated by Utopia. In the underlying action, Nash alleges that "the apartment had mold and other airborne contaminates and/or irritants that had developed in the interior and exterior of the apartment . . . ." Underlying Petition, ¶ 12. Nash also alleges that "[s]erious moisture and mold problems existed in the apartment, including but not limited to mold in the living room, kitchen, bathroom and bedrooms." Underlying Petition, ¶ 18. There are many other allegations specifically alleging mold, fungus, and other airborne contaminates. Underlying Petition, ¶ 19. Nash also alleges that due to Utopia's "failure

to take actions necessary to correct the moisture and mold problems in the apartment, Plaintiffs were exposed to unacceptable levels of mold and fungus for an extended period" causing bodily injury. Underlying Petition, ¶ 20. American Western filed this suit, seeking a declaration that it does not have a a duty to defend or indemnify Utopia in Nash's suit because the claims being asserted in the underlying action fall within the policy's "mold exclusion" and "pollution exclusion."

## II. DISCUSSION

### A. Standard of Review

In order to sufficiently establish a right to summary judgment, a movant must show that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. The Insurer's Duties

Under Missouri law, an insurer's duty to defend its insured is separate from and broader than its duty to indemnify its insured. *Id*; *Lumber Mut. Ins. Co. v. Reload, Inc.*, 113 S.W.3d 250, 253 (E.D. Mo. 2003) (insurer may be obligated to defend insured despite no obligation to indemnify). As they are two separate duties, each must be analyzed individually. *McCormack Baron Mgmt. Servs., Inc., v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999).

### 1. The Duty to Defend

"The duty to defend arises whenever there is a *potential* or *possible* liability to pay based on the facts at the outset of the case and is not dependant on the probable liability to pay based on the facts ascertained through trial." *Id.* (emphasis added). A complaint that includes facts alleging a potentially or arguably insured claim ultimately gives rise to a duty to defend, even where claims beyond coverage are also alleged. *Superior Equip. Co., Inc. v. Maryland Cas. Co.*, 986 S.W.2d 477, 482 (Mo. Ct. App. 1998). "To extricate itself from a duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage." *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W. 385, 392 (Mo. Ct. App. 2007). When determining whether an insurer is obligated to defend its insured, a court must "compar[e] the provisions of the [insurance] policy with the allegations of the complaint filed against the insured." *Superior Equip. Co., Inc.*, 986 S.W.2d at 481.

Coverage for Nash's alleged injuries is expressly barred under the mold exclusion and pollution exclusion in the CGL Policy. Under Missouri law, contracts shall be enforced as written unless they are ambiguous. *E.g., Allstate v. Ibrahim*, 243 S.W.3d 452, 456 (Mo. Ct. App. 2007). "An ambiguity exists when contract language is duplicitous, indistinct, or uncertain, leaving its interpretation open to differing reasonable constructions." *Id.* Where an insurance policy is ambiguous, courts shall construe the language of the policy against the insurer. *Hocker Oil Co., Inc. v. Barker-Phillips-Jackson, Inc.*, 997 S.W.2d 510, 514 (Mo. Ct. App. 1999) (necessary to provide protection to insured). However, if a contract is unambiguous, it should be enforced in accordance with its terms. *E.g., Hempen v. State Farm Mut. Automobile Ins. Co.,* 687 S.W.2d 894 (Mo.1985) (express terms enforced); *Christian v. Progressive Cas. Ins., Co,* 57 S.W.3d 400, 403 (Mo. Ct. App. 2001).

Utopia characterizes Nash's petition as alleging bodily injuries resulting from Utopia's negligent or intentional acts in allowing "serious moisture," "mold," and "airborne contaminants and/or irritants" to be present in Nash's apartment. Utopia does not dispute that the complaints regarding mold are excluded by the policy's mold

3

exclusion, but contends Nash's complaints regarding moisture and airborne contaminants/irritants are not clearly excluded. The Court disagrees with Utopia's analysis. The underlying petition's allegations regarding moisture do not contend Nash was injured by the moisture. The underlying petition claims that serious moisture conditions caused the mold or allowed the mold to be present, and the mold caused the injuries. Absent the mold, there would be no injury from the moisture. The moisture caused the mold, and the mold caused the injury – so the mold exclusion applies.

The pollution exclusion applies to Nash's complaints regarding other airborne contaminants. The pollution exclusion provides in relevant part: " [t]his insurance does not apply to . . . 'bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape or 'pollutants' . . . ." Nash alleges bodily injury resulting specifically from "airborne contaminants and/or irritants." This language mirrors the language in the exclusion, which defines pollutant as "any solid, liquid, gaseous or thermal *irritant or contaminant*." The pollution exclusion clearly and unambiguously excludes from coverage bodily injury resulting from "contaminants and/or irritants."

Utopia's claim that the pollution exclusion is ambiguous lacks merit. Utopia relies on *Hocker Oil Co., Inc. v. Barker-Phillips-Jackson, Inc.*, 997 S.W.2d 510, 514 (Mo. Ct. App. 1999). That decision, however, rested on the unique facts of that particular case; particularly, the oddity of having a policy issued to a gas station exclude coverage for spilled gasoline on the basis that gasoline was a pollutant. Under Missouri law, the term "pollutant" is not limited to traditional environmental pollutants or situations, and the pollution exclusion is not limited to so-called "environmental pollution." *Heringer v. American Fam. Mut. Ins. Co.*, 140 S.W.3d 100, 105-06 (Mo. Ct. App. 2004); *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n., Inc.*, 54 S.W.3d 661, 666 (Mo. Ct. App. 2001). Even if there is ambiguity as to the outer limits of the term "pollutant," there can be little doubt that the exclusion of coverage for bodily injury caused by "irritants" and "contaminants" applies to Nash's claim of bodily injury caused by "airborne contaminants and/or irritants."

Utopia also suggests the underlying petition does not allege a "discharge, dispersal, seepage, migration, release or escape" of a pollutant. These terms are not defined in the policy and are therefore accorded their ordinary meanings. These terms are sufficiently broad to encompass mold and other airborne contaminates that are discharged, dispersed or released into the air before being ingested or inhaled. *Cf. Hartford Underwriters Ins. Co. v. Estate of Turks*, 206 F. Supp. 2d 968, 976 (E.D. Mo. 2002). Here, the underlying complaint alleges injuries resulting from "ingestion and/or exposure to mold and other airborne contaminants." Therefore, such claims are not covered under the CGL Policy.

### *2. The Duty to Indemnify*

An insurer's obligation to indemnify depends upon a finding of an insurer's duty to defend. *Trainwreck West, Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 44 (E.D. Mo. 2007). This statement flows logically from the fact that the duty to defend is broader than the duty to indemnify. If the broader duty does not exist, the narrower one cannot. Where (as here) the insurer has no duty to defend, the insurer has no duty to indemnify. *Id.*

### III. CONCLUSION

Plaintiff's Motion for Summary Judgment (Doc. # 17) is granted. Plaintiff has no duty to defend or indemnify Utopia with respect to the underlying petition.

IT IS SO ORDERED.

                                              /s/ <u>Ortrie D. Smith</u>
                                              ORTRIE D. SMITH, JUDGE
DATE: March 24, 2009                  UNITED STATES DISTRICT COURT